UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET SHEPARD,

    Plaintiff,

v.

                                            Case No. 04-CV-70005-DT

                                            HONORABLE DENISE PAGE HOOD

UNITED STATES POSTAL SERVICE,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**

**I.    BACKGROUND/FACTS**

Plaintiff Margaret Shepard filed the instant action against Defendant John E. Potter, Postmaster General for the United States alleging two counts in her Amended Complaint: Handicap Discrimination under the Rehabilitation Act, 29 U.S.C. § 701 et seq. (Count I) and Retaliation in violation of the Rehabilitation Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* (Count II).

Plaintiff was formerly employed with the United States Postal Service as a letter carrier at the Clarkston Post Office. Plaintiff's job duties included sorting, placing the mail in cases, delivering regular and express mail packages and collecting mail from collection boxes. Plaintiff injured her left arm while delivering the mail on December 3, 1997. Plaintiff's supervisor, Linda Earl, sent Plaintiff to the Concentra Medical Center in Pontiac, Michigan for treatment. Plaintiff was placed on limited duty work assignment. On January 20, 1998, Dr. Glen Moore, a physician with Concentra, concluded Plaintiff could return to her regular letter carrier duties and Plaintiff was released to full duty on February 8, 1998.

Plaintiff thereafter sought medical attention from her family doctor, Dr. Gunsel Avci. Plaintiff was diagnosed as having bilateral carpel tunnel syndrome. Plaintiff's family doctor referred to a hand specialist, Dr. Minkow. Surgery was performed in July 1998 on her left hand and in August 1998, on her right hand. Plaintiff received workers' compensation benefits for both injuries. Plaintiff was on extended leave of absence and was later returned to work on light duty. In February 1999, Plaintiff went to see a pain specialist, Dr. Joseph Meershaert, who concluded Plaintiff had reflex sympathetic dystrophy. Plaintiff claims she was placed on the same work restrictions as Dr. Minkow and medication was prescribed for her condition.

On August 3, 2000, Plaintiff claims she injured her right hand while closing the door of her postal truck (known as an LLV). She reported the incident to Donald Dombrow, the Officer in Charge of the Clarkston Post Office.

Plaintiff went to see her own physician, Dr. Meershaert, on August 3, 2000. Dr. Meershaert's notes indicate Plaintiff was seen in his office on August 3, 2000 for a follow-up appointment and that she would pick up papers for work on August 7, 2000. Plaintiff submitted the paperwork from her doctor's office indicating Plaintiff was not able to work in any capacity due to the injury she sustained on August 3, 2000. Plaintiff did not work from August 3 to October 30, 2000.

Plaintiff filed a claim for workers' compensation benefits for the August 3, 2000 injury. Her supervisor, Mr. Dombrow, was suspicious of Plaintiff's new injury compensation claim because he asserts he had observed Plaintiff using her injured hand to push open the door of the post office on the date she allegedly injured her hand. Mr. Dombrow also saw Plaintiff driving her car from the facility on August 3, 2000. Mr. Dombrow notified Ms. Beverly Valko, Acting Manager of the

Postal Service's Injury Compensation Office. Ms. Valko then contacted the Postal Inspection Service requesting an investigation of whether Plaintiff was engaging in fraud or abuse with respect to her workers' compensation claim. Plaintiff was placed under surveillance by the Inspection Service for several days in August 2000.

The Inspection Service provided a copy of its Investigative Memorandum on October 6, 2000 to Plaintiff's supervisor, Mr. Dombrow. A copy of the Investigative Memorandum was also provided to Dr. Meershaert on October 19, 2000. Dr. Meershaert opined that Plaintiff could return to work on October 30, 2000, with restrictions. Plaintiff was given a limited duty assignment which Plaintiff accepted on October 31, 2000.

On October 23, 2000, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint against her supervisor. Mr. Dombrow was notified of this claim on November 27, 2000.

Mr. Dombrow contacted the labor relations office regarding Plaintiff's conduct and was told by Mr. Edward Novak, a labor relations specialist, to conduct further investigations of Plaintiff. On November 13, 2000, the Inspection Service completed its supplemental investigation into Plaintiff's conduct. Mr. Dombrow contacted the labor relations office after he received the supplemental investigation and was advised on how to conduct a disciplinary interview with Plaintiff. The Postal Inspectors conducted an interrogation of Plaintiff on November 13 and 16, 2000. Mr. Dombrow conducted an investigative interview on November 16, 2000 and a pre-disciplinary interview on November 21, 2000. Plaintiff was issued a Notice of Removal on December 7, 2000 based on the inconsistencies in Plaintiff's representations of her medical condition.

Plaintiff's EEO complaint went through the administrative process. The Postal Service issued a final decision dated November 6, 2003, adopting the Administrative Judge's finding that

Plaintiff had not been discriminated against with respect to the issues raised in Plaintiff's EEO complaint. On January 5, 2004, Plaintiff filed the instant Complaint. Defendant filed a summary judgment motion, a response was filed and a hearing held on the matter.

## II.     ANALYSIS

### A.     Standard of Review

Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true. *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir. 1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

      B.     **Retaliation**

Plaintiff concedes that she is unable to meet the requirement of serious impairment under the Rehabilitation Act and is apparently dismissing her handicap discrimination claim, Count I of the Amended Complaint. (See pp. 1-2, Plaintiff's Response) Plaintiff proceeds with the retaliation claim in Count II.

The Rehabilitation Act prohibits federal employers from discriminating against employees and applies the burden shifting approach has been developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). Where a plaintiff lacks direct evidence of the employer's discriminatory intent, the plaintiff must first establish a *prima facie* case of adverse employment action based on a protected characteristic; then, the employer must produce a non-discriminatory reason for the action, which the plaintiff must attack by demonstrating it is pretextual under the *McDonnell Douglas* burden shifting analysis. To establish a *prima facie* case of discrimination based on retaliation, a plaintiff must show:

> 1) he or she engaged in an activity protected by Title VII;
> 2) his or her employer knew of the participation of the protected activity;
> 3) that the employer thereafter took an employment action adverse to the plaintiff; and

> 4) that there was a causal connection between the protected activity and the adverse employment action.

*Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Once the plaintiff proves her *prima facie* case, the burden shifts to the employer to "articulate some legitimate non-discriminatory reason for the employee's discharge." *Morris v. Oldham County Fiscal Court,* 201 f.3d 784, 792 (6th Cir. 2000). Once the employer meets the burden of articulation, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the reason proffered was a mere pretext. *Id.*

Plaintiff has met the first element. Plaintiff has established that she was engaged in an activity protected by the Rehabilitation Act and Title VII when she applied for workers' compensation for her August 3, 2000 injury and when she filed an EEO complaint against her supervisor.

With regards to the second element, there is no dispute that Plaintiff applied for workers' compensation for her August 3, 2000 injury. However, Defendant claims Plaintiff cannot show that the Postal Inspectors or her supervisor, Mr. Dombrow were aware of her protected EEO activity. The EEO complaint was filed by Plaintiff on October 27, 2000. Plaintiff claims Mr. Dombrow had notice of her EEO complaint by e-mail on November 27, 2000 because he was involved with the arrangements to attend the Mediation Hearing on her EEO claim. (Ex. Bates Stamp. Nos. 000083, 000084; Plaintiff's Aff., ¶ 29) The Notice of Removal of Plaintiff was issued on December 7, 2000, after Mr. Dombrow had notice of Plaintiff's EEO complaint by e-mail on November 27, 2000. Plaintiff has met the second element.

As to the third factor, adverse employment action, Plaintiff has met this factor because she was issued a Notice of Removal on December 7, 2000. *See generally, White v. Burlington Northern*

*& Santa Fe Railway Co.,* 364 F.3d 789 (6th Cir. 2004). Defendant does not dispute that the Notice of Removal issued against Plaintiff is an adverse action. (See, p. 13, Defendant's Br.)

Regarding the causal connection factor, there is a genuine issue of material fact whether the Notice of Removal was issued because of the filing of the workers' compensation claim and/or the EEO claim against Mr. Dombrow.

Defendant claims there is a legitimate nondiscriminatory reason for issuing the Notice of Removal in December 2000 based on the Postal Inspector's surveillances and investigations of Plaintiff after her August 3, 2000 injury–that Plaintiff was misrepresenting the severity of her injury. Plaintiff claims this reason is pretext because the investigations and surveillances are based on the Inspectors' and Mr. Dombrow's subjective personal observations and not based on medical evidence or opinions. The reports submitted by the Inspectors did not include medical opinions. Plaintiff claims that Dr. Meershaert's medical opinions indicating total disability on her workers' compensation claim for her August 3, 2000 injury are unrebutted. No medical opinions were relied upon by the Inspectors or Mr. Dombrow in the Notice of Removal. Even the Agency's own Concentra Clinic found Plaintiff totally disabled on August 7, 2000. (Ex. Bates Stamp No. 000001) Plaintiff has shown there are genuine issues of material fact that Defendant's reason for issuing the Notice of Removal is pretextual. Defendant is not entitled to summary judgment on Plaintiff's retaliation claim in Count II.

## III.    CONCLUSION

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment **(Docket No. 11, filed September 29, 2004)** is GRANTED IN PART and DENIED IN PART.  The motion is granted as to Count I and Count I is DISMISSED.  The motion is DENIED as to Count II, the retaliation claim.

IT IS FURTHER ORDERED that a Final Pretrial Conference be held in this matter on **Monday, November 21, 2005, 2:45 p.m.**  The parties must submit their proposed Joint Final Pretrial Order pursuant to E.D. Mich. L. R. 16.2 by November 16, 2005.  The trial date will be set at the conference.



   /s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: September 27, 2005